IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Fred Freeman, #235180, | ) | CIVIL ACTION NO. 9:09-1102-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Doctor Byrne and Dr. NFN Allewine, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, <u>pro se</u>, pursuant to 42 U.S.C. § 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC) and frequent filer

of litigation in this Court, alleges violations of his constitutional rights by the named Defendants.

Pursuant to previous orders of the Court, several Defendants originally named in this

action have already been dismissed as party Defendants, with the only claims remaining in this case

being Plaintiff's claims that, after April 27, 2007 (the date of the decision <u>Freeman v. SCDC</u>, Civil

Action No. 06-1171), the Defendants Byrne and Allewine have been improperly medicating

treating him with seizure medication. <u>See</u> Orders filed June 11, 2009, December 1, 2009, and April

14, 2010. With respect to these remaining Defendants, a motion for summary judgment pursuant

to Rule 56, Fed.R.Civ.P. was filed on December 15, 2010. As the Plaintiff is proceeding <u>pro se</u>, a

<u>Roseboro</u> order was entered by the Court on December 21, 2010, advising Plaintiff of the importance



of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff served his response in opposition to summary judgment on counsel for the Defendants, but did not himself file a copy of this response with the Court. However, defense counsel has now submitted a copy of Plaintiff's response, which has been placed on the docket of this case. On February 16, 2011, Defendants filed a reply memorandum. Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

With respect to the allegations which relate to Plaintiff's remaining claims, Plaintiff alleges in his verified amended complaint[2] that Dr. Byrne prescribed over dosages of seizure medication which affected Plaintiff's memory and caused swelling and pain in his left side "for months". Plaintiff alleges that Dr. Allewine was "fully aware of constitutional violations" but took no corrective action, and in fact engaged in a "cover up" of this improper medical treatment.[3] See

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3] These general and conclusory statements are the only allegations that can be gleaned from the pro se Complaint which would relate to the period after April 2007, all other claims having previously been dismissed.



generally, Verified Complaint.  Plaintiff also submitted a "Declaration" in opposition to Defendants'

previous motion for summary judgment in which he states that his receipt of overdoses of seizure

medication continued through August 2009, resulting in swelling in various parts of his body and

other ailments.

In support of summary judgment in the case, the Defendant Glenn Allewine has

submitted an Affidavit wherein he attests that he is a contract physician with the Department of

Corrections, and was medical Director for the Department of Corrections from 2001 through 2008.

Allewine attests that, as Medical Director, he relied on the medical providers at each institution to

provide proper medical and mental health care for the inmates, and that he did not have direct

involvement in the care of all inmates.  Allewine further attests that he does not recall the Plaintiff,

but has reviewed his medical records, and that based on this review it does not appear that he had

any involvement with the Plaintiff's medical care since at least January 2007.  Allewine also attests

that, from his review of Plaintiff's medical records, it appears that Plaintiff's Dilantin levels have

been monitored and that Plaintiff has received appropriate amounts of Dilantin based on his Dilantin

levels.  Dr. Allewine further opines from a review of Plaintiff's medical records that Plaintiff has

been provided appropriate medical care for his complaints.  See generally, Allewine Affidavit.

The Defendant Thomas Byrne has submitted an affidavit wherein his attests that he

is a physician employed by the SCDC, and that he has seen the Plaintiff on numerous occasions and

has also reviewed his medical records.  Byrne attests that he saw the Plaintiff approximately forty-

four (44) times between January 2007 and September 2010, and that Plaintiff has also sent numerous

Requests to Staff to him to which he has attempted to respond.  Dr. Byrne attests that Plaintiff was

diagnosed with a seizure disorder prior to his arrival at the Allendale Correctional Institution (ACI),



for which he takes Dilantin, an anti-seizure medication.  Dr. Byrne attests that the generally accepted practice is to prescribe Dilantin and then to check the patient's Dilantin level on a regular basis, usually every six months, and adjust the amount of Dilantin on a regular basis based on the patient's Dilantin levels.

Dr. Byrne attests that when he sees the Plaintiff, he generally has a lengthy discussion with him to attempt to address Plaintiff's complaints.  Byrne attests that Plaintiff appears to be fixated on an incident where he claims that he was injured while at the Perry Correctional Institution at some point in the past, and that he also claims that he had an elevated Dilantin level while at another institution at some point in the past.  Dr. Byrne attests that he does not have any specific information about these alleged incidents.  Dr. Byrne attests that he has explained to the Plaintiff on multiple occasions that he is not aware of any long term effects that are caused by an elevated Dilantin level, and that in his opinion this would not cause or contribute to degenerative disc disease.[4]  Dr. Byrne attests that while an elevated Dilantin level can cause temporary unstableness, he is unaware of any long term effects that result from an elevated Dilantin level.

Dr. Byrne further attests that, although the generally accepted practice is to check a patient's Dilantin level approximately every six months, Plaintiff's Dilantin level was checked thirteen (13) times between January 2007 and May 2010.  Dr. Byrne attests that since Plaintiff has expressed concern on multiple occasions about an elevated Dilantin level, he has ordered that Plaintiff's Dilantin level be checked more often pursuant to these specific requests.  Dr. Byrne also attests that the therapeutic range for Dilantin is 10-20 ug/ml, and that out of the thirteen times

---

[4]Dr. Byrne attests that one of Plaintiff's complaints is that he believes that having received an elevated Dilantin level at some point in the past has led to a number of permanent problems, including degenerative disc disease.



Plaintiff's Dilantin level has been checked between January 27 and May 10, Plaintiff's Dilantin level has only been outside of what he would consider therapeutic range on one occasion; on July 16, 2007, when Plaintiff's Dilantin level was 28.2. Plaintiff's Dilantin dosage was thereafter adjusted, and when Plaintiff was checked again on August 22, 2007, his Dilantin level was 9.7, which is essentially within the therapeutic range. Since July 2007, Plaintiff's Dilantin levels have been between 7.1 and 14.[5] Dr. Byrne also attests that, as Dilantin is an anti-seizure medication, the risk he is aware of is if the Dilantin level is too low, it can lead to seizures. However, to his knowledge and based on a review of Plaintiff's medical records, Plaintiff has not had any type of documented seizure activity since at least January 2007. Byrne further attests that, even though Plaintiff's Dilantin level has been slightly below 10 ug/ml on several occasions, he has not increased the amount of Dilantin prescribed since Plaintiff has had no seizures. However, if Plaintiff were to have any documented seizures, he would at that point determine if Plaintiff's Dilantin level needed to be increased.

Dr. Byrne attests that one potential side effect associated with taking Dilantin is gingival hyperplasia, which causes an individual's gums to grow too much and cause discomfort. Dr. Byrne attests that Plaintiff has complained on various occasions about his gums, and that he has prescribed medication for this condition, including folic acid and penicillin, both of which may provide relief from this condition. Dr. Byrne attests that Plaintiff has also requested on a number of occasions to be seen by an outside medical provider concerning his back, but that based on his examination of the Plaintiff along with review of Plaintiff's medical records, it is his opinion that

---

[5]Dr. Byrne attests that, while the therapeutic range for Dilantin is 10 to 20 ug/ml, if the level is only slightly above or slightly below this range, the medication level will not necessarily be adjusted.



an outside referral is not necessary. Dr. Byrne attests that Plaintiff has been seen by several specialists and a number of diagnostic tests have been completed, and that in his opinion there is no need for additional outside treatment at this time.

Dr. Byrne attests that he has never been instructed not to discuss any aspect of Plaintiff's medical care with him, nor has he been instructed as to the specific care to provide or not to provide to the Plaintiff, either by Dr. Allewine or by anyone else. Dr. Byrne further attests that he does not recall ever even having a conversation with Dr. Allewine concerning the Plaintiff. Dr. Byrne attests that at all times dealing with the Plaintiff he has acted in accordance with generally accepted medical practices, and that in his opinion Plaintiff has been provided proper medical care for his medical complaints. See generally, Byrne Affidavit.

Finally, the Defendants have submitted a copy of Plaintiff's medical records setting forth the care and treatment of the Plaintiff through June 1, 2009. See generally, Nadine Pridgen Affidavit, with attached Exhibits [medical records].

In opposition to the Defendants' motion Plaintiff has submitted copies of some medication records (some of which predate the time period relevant to the allegations still before the Court) which show his receipt of numerous types of medications, including Neurontin and penicillin. Plaintiff has also submitted copies of some radiology reports dating from 2003 and 2004; a health services medical summary from May and June 2008, showing where Plaintiff was seen on several occasions for various medical complaints; some old grievances from 2004 and 2006; some additional health services medical summaries from July and August 2007 and March and April 2008, including an entry from July 17, 2007 when Plaintiff had a Dilantin level of 28.2 [as testified to by Dr. Byrne in his Affidavit]; copies of additional grievances from 2006; additional health services medical



summaries from September 2007 and November and December 2008, wherein Plaintiff continues to complain about the medical care he is receiving, and a written response from the Plaintiff wherein he generally complains that Dr. Byrne and Dr. Allewine are not properly treating him for his condition. See generally, Plaintiff's Brief with attached Exhibits.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

In order to avoid summary judgment, Plaintiff must present sufficient evidence to create a material issue of fact as to whether either named Defendant was deliberately indifferent to



his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797

F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d

318 (4th Cir. 1975). In deciding this issue, it is important to remember that whether or not Plaintiff

was provided with the care he *desired* is immaterial. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.

1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also

Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994). Here, the Defendants (both

licensed physicians) attest that Plaintiff has been provided appropriate medical care for his

complaints. While Dr. Allewine reaches this conclusion based on his review of Plaintiff's medical

records, Dr. Byrne has actually personally provided medical care to the Plaintiff. The Defendants

have also submitted voluminous medical records showing Plaintiff's long and repeated history of

being seen and evaluated by medical personnel for his medical conditions and complaints. Indeed,

it is not even contested that Plaintiff has been and is receiving medical care for his complaints;

rather, Plaintiff is simply dissatisfied with the medical care he has received.

   Mere disagreement between the Plaintiff and Defendants about the seriousness of his

medical complaints or the course of his treatment does not constitute deliberate indifference on the

part of either named Defendant. Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan. 1986); Jackson,

846 F.2d at 817 ["Although the Constitution does require that prisoners be provided with a certain

minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his

choice."]. While Plaintiff obviously feels strongly about the course of treatment he should have

received for his condition or conditions, he is not a doctor, and his lay opinion that his past treatment

has been incorrect or that he should be receiving additional or different treatment than the treatment

he is being provided is not in and of itself sufficient to create a genuine issue of fact as to whether



he is being denied proper medical care. See Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]).

The Defendants, who are both licensed medical professionals, have submitted affidavits attesting that, in their opinions, Plaintiff's care has been appropriate and meets the proper medical standard of care. The Defendants have also submitted Plaintiff's medical records, which detail the level of care Plaintiff has received while in the custody of the South Carolina Department of Corrections for the relevant time period. No deliberate indifference is indicated in any of this evidence. Conversely, Plaintiff has presented no opinion or evidence from any medical professional showing that he should be receiving a different regime of treatment than he is currently receiving, or that his failure to receive a different course of treatment constitutes deliberate indifference to a serious illness or injury.[6] House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)

---

[6]Even if the Court were to find that the evidence was sufficient to create an issue of fact as to whether either named Defendant was *negligent* with respect to their treatment of the Plaintiff (a finding which the undersigned does not make), Plaintiff's claim would still be subject to dismissal, as negligent or incorrect medical treatment is not actionable under § 1983. Estelle, 429 U.S. at 106; see Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. Section 1983 simply does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989); Daniels v. Williams, supra [Jailers may owe a special duty of care to those in their custody under state tort law,...but...we

(continued...)



[Plaintiff's conclusory allegations insufficient to maintain claim]; <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; <u>Bender v. Suburban Hospital, Inc.</u>, 159 F.3d 186 (4th Cir. 1998); <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though <u>pro</u> <u>se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. <u>See also</u> <u>Estelle</u>, 429 U.S. at 105; <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505-1507 (11th Cir. 1991); <u>see</u> <u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting <u>Farmer v. Brennan</u>, 511 U.S. at 837.  Therefore, no constitutional claim relating to medical care sufficient to survive summary judgment has been presented.

### Conclusion

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  Such is the case here.  Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

---

<sup>6</sup>(...continued)
reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; <u>Paul v. Davis</u>, 424 U.S. 693, 697 (1976); <u>see also</u> <u>Brooks v. Celeste</u>, 39 F.3d 125 (6th Cir. 1994); <u>Sellers v. Henman</u>, 41 F.3d 1100 (7th Cir. 1994); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3d Cir. 1990); <u>Smart v. Villar</u>, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 16, 2011
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

– 12 –
